**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Harvey Yazzie, | No. CV-23-08510-PCT-JAT |
|     Plaintiff, | **ORDER** |
| v. | |
| Office of Navajo and Hopi Indian Relocation, | |
|     Defendant. | |

Pending before the Court are Plaintiff's Motion for Summary Judgment (Doc. 11) and Defendant's Cross-Motion for Summary Judgment (Doc. 15), which are fully briefed (Docs. 12, 16, 17). The Court now rules.

## I.   BACKGROUND

Plaintiff Harvey Yazzie seeks judicial review of an administrative decision by Defendant Office of Navajo and Hope Indian Relocation ("ONHIR"), denying Plaintiff relocation benefits under the Navajo-Hope Settlement Act. Pub. L. No. 93-531, 88 Stat. 1712 (1974) (the "Settlement Act").

### A.   The Settlement Act

The Settlement Act attempted to resolve an inter-tribal conflict between the Hopi and Navajo by authorizing a court-ordered partition of land that was then-jointly held by the two tribes. *See Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121–22 (9th Cir. 1989). The Settlement Act also created the predecessor to ONHIR to provide services and benefits to relocate individuals who resided on land allocated to the

1  other tribe. *Id.* at 1121. To be eligible for benefits under the Settlement Act, a Navajo
2  applicant must prove (1) that he was a legal resident of the Hopi Partitioned Land ("HPL")
3  on December 22, 1974, and (2) that he qualified as a head of household by July 7, 1986.
4  *See* 25 C.F.R. § 700.147 (1982). The applicant bears the burden of proving legal residence
5  and head of household status. § 700.147(b).

6  **B.    Facts and Procedural History**

7  Plaintiff is an enrolled member of the Navajo Nation who applied for relocation
8  benefits on August 12, 2009. (Doc. 12 at 1; Doc. 16 at 2; Certified Administrative Record
9  ("CAR") at 67–74). In his application, Plaintiff stated that on December 22, 1974, he was
10 living on the HPL "17 miles south of the Coal Mine Chapter." (Doc. 12 at 3, 4; Doc. 16
11 at 5, 10; CAR at 69). Plaintiff's first child, Corey Murray Yazzie, was born on September
12 15, 1976. (Doc. 12 at 5; Doc. 16 at 9; CAR at 70, 163). Plaintiff's application states that he
13 earned more than $1,300 in a year prior to 1986 and gives his employer as PHS Indian
14 Hospital. (CAR at 70–71). Plaintiff further states in his application that he moved off the
15 HPL in 1990. (Doc. 16 at 3; CAR at 71).

16 After Plaintiff submitted his application, on May 4, 2012, ONHIR contacted
17 Plaintiff requesting he "provide a detailed chronology from May 1974 to September 15,
18 1976, stating where [he was] living and what [he was] doing." (Doc. 15 at 3). In response,
19 Plaintiff provided a handwritten chronology identifying his residence as "17+ miles South
20 of the Chapter House." (*Id.*; Doc. 9-1 at 102). He also stated that he lived with multiple of
21 his relatives near Coal Mine, worked in auto repairs in the area, and split his months
22 between his ranch and his girlfriend's parents' house in Tuba City. (Doc. 9-1 at 102).
23 Plaintiff spoke to ONHIR's attorney, Howard Brown, on July 11, 2012, and Mr. Brown
24 recorded his notes which were introduced into the record. (Doc. 15 at 3; Doc. 9-1 at 110–
25 11). Mr. Brown's notes indicate that Plaintiff was living with his girlfriend in Tuba City
26 and he would go back and forth between Tuba City and his family's ranch. (Doc. 9-1
27 at 110).

28 ONHIR denied Plaintiff's application by letter dated December 26, 2012. (*Id.*

at 113–14). The letter referenced Plaintiff's conversation with Mr. Brown but also points out that Plaintiff was not listed in the Bureau of Indian Affairs' 1974–1975 Enumeration ("Enumeration") of people residing on the HPL. (*Id.* at 113). Additionally, the letter mentions that at his other family members' appeal hearings, there was no testimony indicating that Plaintiff lived on the HPL. (*Id.* at 114). Plaintiff appealed ONHIR's denial on February 1, 2013. (*Id.* at 117).

A hearing was held before Independent Hearing Officer ("IHO") Harold J. Merkow on March 24, 2017. (*Id.* at 139). Plaintiff, Jones Yazzie, Jr. (Plaintiff's brother), Hugh Paddock (Plaintiff's uncle), and Julia Yazzie (Plaintiff's mother) all testified on Plaintiff's behalf. (Doc. 9-2 at 15–81). Joseph Shelton testified for ONHIR. (*Id.*) Plaintiff testified that he grew up near Coal Mine on his family's two homesites on the HPL. (*Id.* at 16). Upon completing high school in June 1974, he obtained a job at El Grande selling automotive parts in Tuba City until November 1974. (*Id.* at 19, 38). He stated that he was paid by check for this work. (*Id.*) He then testified that in November 1974, he was laid off of the job at El Grande and he returned to the HPL and earned a living as a ranch hand and fixing cars until the fall of 1975. (*Id.* at 20, 38) Plaintiff then stated that he started attending college in Tsaile, Arizona, in fall of 1975 and stopped attending in spring of 1976 because his son was about to be born. (*Id.* at 21–22). He then testified that he was hired as a driver at the hospital in Tuba City shortly thereafter. (*Id.* at 22).

Upon cross-examination, ONHIR's counsel introduced an unofficial transcript from Dine College in Tsaile that showed Plaintiff signed up for college in fall of 1974 and spring of 1975. (*Id.* at 29). Plaintiff verified that the social security number on the transcript was correct. (*Id.* at 39). Additionally, ONHIR's counsel referred to Plaintiff's social security earnings statement showing no income in 1974. (*Id.* at 30–32). Plaintiff did not have an explanation for the discrepancy between the record of him signing up for college classes in fall of 1974 and the lack of earnings in 1974 for the alleged job at El Grande despite testifying he was paid by check. (*Id.* at 29–32).

Jones Yazzie, Jr. testified that he began attending Tuba City high school in 1974.

1  (*Id.* at 49). He stated that he would spend his summers on the family ranch in the Coal Mine area. (*Id.* at 50). He then testified that he and Plaintiff would "go traveling a lot around," tend livestock, and that he saw Plaintiff at some of the family's traditional ceremonies they would perform at the ranch. (*Id.* at 50–51). He did not identify how often he saw Plaintiff at the family's HPL site.

Hugh Paddock testified about his employment in Tuba City and living near Plaintiff's family's home near Coal Mine. (*Id.* at 58–59). He also testified about seeing Plaintiff at the family's ranch near Coal Mine performing chores for the family and tending to livestock. (*Id.* at 64). Paddock testified that he would see Plaintiff "on a regular basis" but did not specify how often Plaintiff spent time at the family's ranch near Coal Mine. (*Id.* at 64).

Julia Yazzie testified that she saw Plaintiff on a "regular basis" at the HPL near Coal Mine between the time Plaintiff graduated high school and his wife had their first child. (*Id.* at 75). She also testified that he did chores and took care of livestock. (*Id.* at 76). However, like the other witnesses, she did not identify how often Plaintiff visited the HPL. (*Id.*)

Joseph Shelton testified that Plaintiff's family is not enumerated on the Enumeration. (*Id.* at 77). Additionally, he testified that any improvements Plaintiff described on the HPL site are not listed on the Enumeration. (*Id.*)

On June 19, 2017, the IHO issued his decision denying Plaintiff's appeal and affirming ONHIR's denial of relocation benefits. (*Id.* at 136–143). Regarding the witnesses, the IHO determined that Plaintiff's testimony "about his employment at Dine College during the periods of time about which [Plaintiff] testified is not credible when weighed against the documentary evidence." (*Id.* at 138). The IHO determined that the testimony from Jones Yazzie, Jr., Hugh Paddock, and Julia Yazzie had "limited credibility" regarding Plaintiff's visits to the HPL. (*Id.* at 139). The IHO concluded that Plaintiff was not entitled to relocation benefits because he was a resident of Tuba City on December 22, 1974, and in September 1976 when he became a head of household. (*Id.* at 140–41).

ONHIR adopted the IHO's decision as final on July 21, 2017. (Doc. 16 at 7). Plaintiff now appeal ONHIR's decision.

## II. STANDARD OF REVIEW

The Administrative Procedure Act ("APA") governs judicial review of agency decisions under the Settlement Act. *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914 (9th Cir. 1995). Unlike summary judgment in an original district court proceeding, the function of the Court in a review of an administrative proceeding "is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Engineering Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985). The APA provides that a reviewing court may set aside an administrative agency's decision only if that decision was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni*, 878 F.2d at 1122 (citing 5 U.S.C. § 706(2)(A), (2)(E) (1982)). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Hopi Tribe*, 46 F.3d at 914 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). An agency decision is arbitrary and capricious only if the agency "entirely failed to consider an important aspect of the problem, offered an explanation that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm*, 463 U.S. at 43.

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). In reaching his conclusions, the IHO "is entitled to draw inferences logically flowing from the evidence." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). "Where evidence is susceptible of more than one rational interpretation, it is the [agency's] conclusion which must be upheld." *Id.* Ultimately, the Court must affirm if the agency "considered the relevant factors and articulated a rational connection between

the facts found and the choices made." *Friends of Animals v. U.S. Fish & Wildlife Serv.*, 28 F.4th 19, 28 (9th Cir. 2022) (quoting *Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1115 (9th Cir. 2007)).

## III. DISCUSSION

Plaintiff argues that the IHO's decision must be overturned because (1) the IHO improperly rejected Plaintiff and his witness's testimony as not credible or having limited credibility; (2) the IHO's determination that Plaintiff was a resident of Tuba City was not based upon substantial evidence; and (3) the IHO's rejection of Plaintiff's testimony about his employment from 1974 through 1976 was arbitrary and capricious. (Doc. 11 at 4). Defendant argues that Plaintiff did not meet his burden to prove he was a resident of HPL as of December 22, 1974, and on the date he became a head of household. (Doc. 15 at 2).

### A. Credibility Findings

Plaintiff argues that the IHO's findings that his testimony was not credible when weighed against the documentary evidence and that each of his three witnesses' testimony had limited credibility were arbitrary and capricious because the IHO failed to offer specific and cogent reasons to support his findings. (Doc. 11 at 5). Thus, Plaintiff reasons, the ALJ did not support his credibility determinations with substantial evidence. (*Id.*)

The IHO found that Plaintiff was not a credible witness because "there is a grave discrepancy between [Plaintiff]'s testimony about his work and school activities and the documentation applicant supplied to support his application." (Doc. 9-2 at 141). The IHO discounted each of Plaintiff's witnesses as having "limited credibility" because they did not quantify Plaintiff's visits sufficiently to show such visits were "substantial, regularly occurring, or of sufficient duration to conclude that his absence from [the] Coalmine Chapter was temporary." (*Id.* at 140).

"Generally, 'questions of credibility and resolution of conflicts in the testimony are functions solely' for the agency." *Parra*, 481 F.3d at 750 (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). "When the decision of an [IHO] rests on a negative credibility evaluation, the [IHO] must make findings on the record and must support those

- 6 -

findings by pointing to substantial evidence on the record." *Ceguerra v. Sec'y of Health & Hum. Servs.*, 933 F.2d 735, 738 (9th Cir. 1991). The Ninth Circuit recognizes that an IHO is best suited "to observe [a witness]'s tone and demeanor, to explore inconsistencies in testimony, and to apply workable and consistent standards in the evaluation of testimonial evidence. He is . . . uniquely qualified to decide whether [a witness]'s testimony has about it the ring of truth." *Sarvia-Quintanilla v. U.S. Immigr. & Naturalization Serv.*, 767 F.2d 1387, 1395 (9th Cir. 1985). Therefore, a reviewing court will not disturb an IHO's credibility findings unless the IHO fails to provide "specific and cogent reasons supported by substantial evidence." *Tso v. Off. of Navajo & Hopi Indian Relocation*, No. CV-17-08183-PCT-JJT, 2019 WL 1877360, at *5 (D. Ariz. Apr. 26, 2019) (quoting *De Valle v. Immigr. & Naturalization Serv.*, 901 F.2d 787, 792 (9th Cir. 1990)); *see also Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (stating that the court "will not reverse credibility determinations of an [IHO] based on contradictory or ambiguous evidence").

Here, the IHO provided specific and cogent reasons supported by substantial evidence to explain his credibility findings. As the IHO acknowledged, the documentary evidence in the record belies Plaintiff's testimony regarding his activities and residency during the operative period in his claim. Despite testifying he worked at an auto parts store where he was paid by check in 1974, Plaintiff's social security earnings were zero for that year. (Doc. 9-2 at 141). Although Plaintiff testified that he attended Dine College in 1975 and 1976, his college records indicate a record of him signing up for classes in 1974 and 1975 and indicates no records of attendance for 1975 to 1976. (*Id.*) Plaintiff explains away this discrepancy by stating that "30 years [have] elapsed between the issuance of the transcript and the years of attendance in question . . . when errors and omissions in typed forms could have more easily occurred." (Doc. 11 at 9). The Court acknowledges the possibility that errors could have occurred, however, the inconsistencies regarding the transcripts combined with the inconsistencies in social security earnings serve as specific and cogent reasons for finding Plaintiff's testimony not credible. Under the deferential standard of review here, the Court declines to disturb the IHO's credibility finding. *See*

*Kirk v. Off. of Navajo & Hopi Indian Relocation*, 426 F. Supp. 3d 623, 629 (D. Ariz. 2019) (citing *Kaur v. Gonzalez*, 418 F.3d 1061, 1064 (9th Cir. 2005)) ("Minor inconsistencies that go to the heart of [an] applicant's claim . . . will support an adverse credibility determination.").

As for Plaintiff's witnesses, the IHO did not completely discount their testimony but stated they had limited credibility regarding the frequency of Plaintiff's visits to the HPL. (Doc. 9-2 at 139). The Court interprets this phrasing as the IHO crediting the witnesses' testimony to the extent that they were being truthful about having seen Plaintiff around the HPL—with no quantification—during the operative period, not as a "blanket dismissal" as asserted by Plaintiff. (Doc. 11 at 6). Indeed, upon the Court's review of the transcript, Plaintiff's witnesses did not quantify Plaintiff's return trips to the HPL beyond general references to him being present. (*See* Doc. 9-2 at 50–51, 63–65, 75–76). Federal regulations clearly establish that the "burden of proving residence and head of household status is on the applicant." 25 C.F.R. § 700.147(b). Plaintiff's witnesses provided no more than "yes" answers to Plaintiff's counsel's questions about whether they'd seen Plaintiff around the property during the operative period, and they provided no additional context or specificity to their testimony. This is a specific and cogent reason to lend limited credibility to this testimony, particularly in light of the inconsistencies in Plaintiff's testimony and evidence that his girlfriend and eventual son lived in Tuba City. The IHO provided specific and cogent reasons supports by substantial evidence to discount the testimony of Plaintiff's witness and will not disturb the credibility finding of the IHO.

### B. Plaintiff's Residence in 1974

Plaintiff next challenges the IHO's finding that Plaintiff was a resident of Tuba City on December 22, 1974. (Doc. 11 at 11). He argues that the IHO erred by "diminishing without reason the testimony of Mr. Yazzie's witnesses, and by entirely dismissing Mr. Yazzie's own testimony about his presence at his HPL home in the early 1970s." (*Id.*) Plaintiff continues saying, "[t]he [sic] HO cites no record evidence contrary to this description of Mr. Yazzie's residency, and activities, in 1973 through 1976." Defendant

responds that IHO used multiple pieces of recorded evidence to support his conclusion that Plaintiff did not meet his burden of proving he resided on the HPL on December 22, 1974. (Doc. 15 at 12–14).

The Court agrees with Defendant that contrary to Plaintiff's assertion, the IHO pointed to multiple points in the record that support the IHO's conclusion that Plaintiff did not satisfy his burden of proving he resided on HPL on December 22, 1974. As previously discussed, the IHO properly discounted Plaintiff and his witnesses' testimony. Accordingly, the IHO relied on Plaintiff's social security statements, the absence of Plaintiff and his family in the Enumeration, Plaintiff's attendance and meeting of his girlfriend at Tuba City High School, and Plaintiff's college transcript to find that Plaintiff was a resident of Tuba City on December 22, 1974. (*See* Doc. 9-2 at 141–43). Although the Enumeration "alone cannot establish residence . . . it may be used as *prima facie* evidence of residency that Plaintiff then has the burden of disproving." *Begay v. Off. of Navajo & Hopi Indian Relocation*, 305 F.Supp.3d 1040, 1049 (D. Ariz. 2018). The Enumeration, in combination with the properly discounted testimony and other documentary evidence which contradict Plaintiff's account of his whereabout in December 1974 constitute substantial evidence to support the IHO's residency finding.

### C. Plaintiff's Employment 1974–1977

Finally, Plaintiff argues that "[t]here is also substantial evidence that Mr. Yazzie met ONHIR's eligibility standard for head of household prior to [his son's birth] by virtue of earning income sufficient to provide for his self-support." (Doc. 11 at 14). Defendant replies that Plaintiff's argument fails for three reasons:

> (1) Plaintiff did not testify that his earnings at the automotive parts shop in 1974 exceeded $1,300.00; (2) Plaintiff's work for an automotive parts shop in Tuba City, where he was paid by check by his own admission (CAR 171), is not an "odd job" that does not "allow wage statements"; and, (3) Plaintiff did not argue at the agency level that he attained head of household status in 1974, and has therefore waived this argument.

(Doc. 15 at 17). In Plaintiff's post-hearing brief in the administrative proceedings, he states "[t]he testimony presented at Applicant's hearing establishes his continuing frequent and

recurring contacts with his HPL home up through the time that he became Head of Household in September, 1976, by virtue of having a child." (Doc. 9-2 at 131). The Court agrees with Defendant that Plaintiff has waived any argument that he attained head of household status prior to the birth of his son because he conceded that fact in his post-hearing brief. *See Bahe v. Off. of Navajo*, No. CV-17-08016-PCT-DLR, 2017 WL 6618872, at *2 (D. Ariz. Dec. 28, 2017) ("Where, as here a petitioner in an administrative proceeding fails to raise an issue before the administrative tribunal, the issue cannot be raised on appeal from that tribunal. 5 U.S.C. § 704 (provides for judicial review of "final agency action"); *Darby v. Cisneros*, 509 U.S. 137, 146 (1993) (finding that APA "explicitly requires exhaustion of all intra-agency appeals mandates either by statute or by agency rule"); *Reid v. Engen*, 765 F.2d 1457, 1460 (9th Cir. 1985) (noting that '[a]s a general rule, if [plaintiff] fails to raise an issue before an administrative tribunal, it cannot be raised on appeal from that tribunal.')"). The Court finds Plaintiff's argument on this issue waived.

## IV. CONCLUSION

For the reasons stated above, Defendant ONHIR's decision to deny relocation benefits was not arbitrary, capricious, or an abuse of discretion. It was in accordance with law and supported by substantial evidence. Therefore, Defendant is entitled to summary judgment.

Accordingly,

**IT IS ORDERED** Plaintiff's Motion for Summary Judgment (Doc. 11) is **DENIED**.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**IT IS FURTHER ORDERED** Defendant's Cross-Motion for Summary Judgment (Doc. 15) is **GRANTED**. Defendant's administrative decision denying Plaintiff's application for relocation benefits is, therefore, **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 8th day of July, 2024.

_____
James A. Teilborg
Senior United States District Judge